Affirmed and Memorandum Opinion filed March 10, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00134-CR

___________________

 

John Lee Basey, Appellant

 

V.

 

THE State of Texas, Appellee



 



 

On
Appeal from the 174th District Court

Harris County,
Texas



Trial Court Cause No. 1132602

 



 

 

MEMORANDUM OPINION

Appellant, John Lee Basey, was
convicted of aggravated sexual assault of a child and sentenced to life in
prison.  He raises three points of error:  (1) the trial court inappropriately
commented on appellant’s guilt during voir dire, (2) the trial court was not an
impartial judge, and (3) appellant’s trial counsel was ineffective.  We affirm.

FACTUAL AND
PROCEDURAL BACKGROUND

I.                  
 The Offense

Appellant does not appeal based upon the facts of the
crime, so we provide a brief recitation.  The complainant, C.L., testified that
the sexual assault occurred during 1993 when she was twelve years old.  She
stated she was walking to school when appellant drove behind her, stopped, and
engaged her in a conversation about arriving for school on time.  C.L. informed
the jury appellant wore Houston Independent School District police officer
jacket.  

C.L. testified she entered appellant’s vehicle
because he explained he needed to take her to juvenile detention because she
was tardy.   She stated he then stopped at a pay telephone and told C.L. he was
“call[ing] it in.”  C.L. told the jury that after returning to the car, appellant
asked C.L. for a kiss, threatening he would inform the people in juvenile
detention she had drugs and a gun in her possession if she refused.  C.L.
testified that appellant then drove his automobile to a location underneath
Interstate 10, stopped his vehicle, and pulled down her pants.  She stated
appellant required her to perform oral sex on him and then physically forced
her to submit to sexual intercourse.  C.L. stated that appellant said he would
shoot her if she screamed, but she could not remember if she saw a gun.  

After appellant completed intercourse, C.L. testified
that appellant drove her close to school.  C.L. went directly to the school
nurse and informed her she had been raped.  C.L. eventually gave a statement to
the police and went to Texas Children’s Hospital, where an evidence kit was
performed.  That kit apparently remained in the Houston Police Department (“HPD”)
property room, untested, from 1993 to 2007.[1] 


Officer Julie Anderson of HPD testified that in 2007,
she was informed that the DNA from C.L.’s evidence kit matched appellant’s
DNA.  Officer Anderson contacted C.L. and performed a photo spread of six individuals,
including appellant, with C.L.  C.L. identified appellant from the photo spread.   


Appellant was later arrested and charged with sexual
assault against C.L.  The jury convicted appellant of sexually assaulting C.L. 
See Tex. Penal Code § 22.0011 (West 2010).

II.              
 The Punishment Phase of Trial

During the punishment phase of the trial, the State
called several witnesses.  A woman named L.T. testified appellant raped her
when she was 16.  Appellant was not tried for this alleged sexual assault.

Appellant also stipulated to three convictions: two
counts of impersonating a police officer, and one of sexual assault.  He was
convicted of the offenses in 2004, and received ten years’ deferred
adjudication for the crimes.  

Officer Gilbert Brillon of the Major Offenders
division of HPD investigated the stipulated offenses and testified to the facts
of the cases.  He stated in both cases of impersonating a police officer, appellant
approached prostitutes and negotiated payment for sex.  Officer Brillon explained
that after the women agreed to exchange money for sex, appellant claimed to be
a police officer and threatened the women with incarceration unless they each
agreed to perform sexual favors.  Appellant held one of the prostitutes, D.L., in
his custody for two to three hours while he exposed himself to her.  Prostitute
T.B. had intercourse with appellant to earn release from his custody.  All of
Officer Brillon’s testimony occurred without objection from defense counsel.  

Appellant chose to testify in the punishment phase. 
He confessed to raping C.L. and L.T.  He also testified that after he entered
deferred adjudication in 2004, he entered sex offender therapy and became a
registered sex offender.  Defense counsel asked appellant if he was the same
“John Basey as in 1993” or “the same John Basey that committed the acts in
2004.”  Appellant answered in the negative to both questions.  

Defense counsel began his closing argument with the
following statement:  

Mr. Basey was a monster.  He raped a 12-year-old girl in
1993.  And in 2002, you heard from a young lady yesterday that he raped, a
young lady of 16.  And then he had occasion to rape prostitutes in . . . 2002. 
He was arrested for those crimes and placed on community supervision, deferred
adjudication. He was not convicted, so he's eligible for probation in this case.

Defense counsel then described his personal views on
rehabilitation and discussed appellant’s actions in his sex offender classes. 
He also described the family appellant testified he endured as a child. 
Defense counsel then addressed the “benefit [appellant] would be to the
community as a convicted sex offender ministering to other sex offenders to
change their ways . . .” and noted a prison sentence would not change the fact
that the rapes occurred.  Defense counsel argued, “[Appellant] got on the stand
and told you what he has done.  He told you he was a monster.  He lied about it
in the past, sure . . . I’m asking you to keep him on community supervision so
he can continue to go[] to those classes, he can be monitored by the State, and
he can continue to support his children.  I’m asking you not to lock him in a
cage . . .”  

I.                  
 Did the Trial Judge’s Comment, during Voir Dire, Adversely Affect
Appellant’s Presumption of Innocence or Affect the Trial Court’s Impartiality?

Appellant’s first and second issues appeal a
statement made by the trial judge during voir dire.  

The comment at issue occurred early during voir
dire.  The trial judge had discussed the trial schedule, requirements for serving
as a juror, the purpose of voir dire, and the standard of proof in criminal
trials.  He then explained that jurors hear objections and the judge responds
to the attorneys with either “sustained” or “overruled” and “that allows me to
judge what I believe the law is to be.”  He continued:

And what will happen then is we have a court reporter
taking down every word that is said in this court.  That is why jurors are not
allowed to take notes.  You must decide the case from the sterile environment
in this courtroom and nothing else.  If something is to be read back to you
during your deliberations, it will be read back by the court reporter, after
you’ve had ample opportunity to send notes out and tell us what you are in
question about.  Then I, as the Judge, will decide what goes back to you and
what doesn’t. 

Now, all this is taken down and at the end of the trial it
is presented as a record and that record is what is appealed up to the Court of
Criminal Appeals or the Courts of Appeals.  And the only thing[s] that [are]
appealed are mistakes that the Judge makes as to rulings.  

Defense counsel made no objection to these remarks by
the trial judge.  

In his first point of error, appellant contends the
trial court’s comment “that record is what is appealed up to the Court of
Criminal Appeals or the Courts of Appeals” adversely affected appellant’s presumption
of innocence, creating fundamental error.  Appellant’s second issue pertains to
whether the trial judge’s comment prevented appellant from receiving a trial with
an impartial judge.

1.      Standard
of Review

To preserve error, a
defendant must generally make a timely and specific objection. Tex. R. App.
P. 33.1.  Almost every right, constitutional and statutory, may be waived by
the failure to object. Smith v. State, 721 S.W.2d 844, 855
(Tex.Crim.App.1986).  Absent an objection, a defendant waives error unless the
error is fundamental—that is, the error creates egregious harm.  Ganther v.
State, 187 S.W.3d 641, 650 (Tex.App.-Houston [14th Dist.] 2006, pet.
ref'd); see Texas R. Evid. 103(d); Villareal v. State, 116 S.W.3d
74, 85 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Egregious harm prevents a
defendant from receiving a fair and impartial trial. Ganther, 187 S.W.3d
at 650.  Here, appellant failed to make a timely and specific objection , therefore,
appellant's issue on appeal survives only if the trial judge's comment
constitutes fundamental error. 

 

The United
States Supreme Court has determined that when certain constitutional rights are
violated, fundamental error occurs. See Arizona v. Fulminante, 499 U.S.
279, 309—10, (1991); Williams v. State, 194 S.W.3d 568, 579
(Tex.App.-Houston [14th Dist.] 2006), aff'd, 252 S.W.3d 353 (Tex.Crim.App.
2008). The Court defined such errors as “structural defects in the constitution
of the trial mechanism.” Fulminante, 499 U.S. at 309. These fundamental
constitutional rights include the right to counsel, the right to an impartial
judge, the right to not have members of the defendant's race unlawfully
excluded from a grand jury, the right to self-representation at trial, and the
right to a public trial.  Id. at 309-10; Williams, 194 S.W.3d at
579.

In
addition to the fundamental errors established by the United States Supreme Court, a plurality of the
Texas Court of Criminal Appeals held another fundamental error of
constitutional dimension could exist if a trial judge makes a comment that
taints the presumption of innocence. Blue v. State, 41 S.W.3d 129, 132
(Tex.Crim.App.2000) (plurality opinion). 

2.       Analysis

Appellant relies on Blue v. State as the
primary basis for his argument that the trial judge's comment in this case
constitutes fundamental error.  Appellant compares the trial judge's statements
in this case with the comments made by the trial judge in Blue. We
disagree with appellant.

In Blue,
during jury selection, the trial court instructed prospective jurors that (1) a
trial delay was due to the defendant prolonging plea bargain negotiations with
the State; (2) the trial court would prefer the defendant plead guilty; and (3)
there were reasons an innocent defendant might not testify, defense counsel
might call “Sister Theresa” to testify even if he knew she was lying because
nobody would believe she would lie. Id. at 130; see Ganther, 187
S.W.3d at 650 (explaining the facts and issues in Blue). Although the
defendant in Blue did not object to the comments at trial, he complained
of them on appeal. Id. The intermediate court concluded the error was
waived because no contemporaneous objection was uttered, but the Court of
Criminal Appeals reversed, holding the error was outside the scope of waived
error.  Tex. Code Crim. Proc. Ann. art. 33.1 (West 2010);  id. at 130,
133.  The judges voting to reverse, however, did not agree on the rationale.  See
id. at 132, 138.  Four judges concluded the trial court's comments tainted
the presumption of innocence and were fundamental error of constitutional
dimension.  Id. at 132; see Saldano v. State, 70 S.W.3d 873, 889
n. 72 (Tex.Crim.App.2002) (discussinging Blue).  A fifth judge determined
the trial court's comments violated the right to an impartial judge. Blue,
41 S.W.3d at 138 (Keasler, J., concurring); see Saldano, 70 S.W.3d at
889 n. 72 (explaining Blue).  Assuming without deciding that Blue
created another category of fundamental error in Texas, there is no majority
opinion in Blue, so it is not binding precedent. Ganther, 187
S.W.3d at 650; see Pearson v. State, 994 S.W.2d 176, 177 n. 3
(Tex.Crim.App.1999). 

However, even if we were bound to follow the
plurality opinion in Blue, the trial judge's comment in this case did
not rise to such a level that undermined the presumption of innocence or
vitiated the impartiality of the judge. Considering the trial judge’s comments
as a whole, the intent of the solicitation was to educate the voir dire panel
on the purposes and uses of a trial transcript.  It was not a statement on
either appellant’s presumption of innocence or the trial judge’s partiality
towards the prosecution.  See Ganther, 187 S.W.3d at 650 (holding the trial
judge's comments regarding appellant representing himself were not fundamental
error so appellant waived complaint on appeal by failing to object at trial); Gordon
v. State, 191 S.W.3d 721, 726-27 (Tex.App.-Houston [14th Dist.] 2006, no
pet.) (holding the trial judge's statements about how the defendant controls
the system did not constitute fundamental error); Rabago v. State, 75
S.W.3d 561, 561-63 (Tex.App.-San Antonio 2002, pet. ref'd) (holding the trial
judge's pronouncements regarding appellant's prior conviction was not
fundamental error).

We overrule appellant’s first and second issues.

 

 

II.              
 Did Appellant Receive Ineffective Assistance of Counsel from His
Trial Attorney?

In his third issue, appellant contends he received
ineffective assistance of counsel in violation of the U.S. and Texas
Constitution, as well as the Texas Code of Criminal Procedure.  See U.S.
Const. amend. VI; Tex. Const. Art. I, Sec. 10; Tex. Code Crim. Proc. Ann. §
1.051; Strickland v. Washington, 466 U.S. 668 (1984).  Appellant claims
the ineffective assistance is proven because: (1) defense counsel failed to
object to the trial judge’s comments during voir dire; (2) defense counsel
failed to object on the grounds of hearsay and the Confrontation Clause when
Officer Brillon testified about the stipulated offenses; and (3) defense
counsel referred to appellant as “a monster” in final argument.

A.     Standard
of Review

When reviewing claims of ineffective assistance of
counsel, we apply a two-prong test.  See Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005) (citing Strickland v. Washington, 466
U.S. 668, 687 (1984)).  To establish ineffective assistance of counsel,
appellant must prove by a preponderance of the evidence that (1) his trial
counsel’s representation was deficient to the point it fell below standards of
prevailing professional norms; and (2) there is a reasonable probability that,
but for counsel’s deficiency, the result of the trial would be different.  Id. 
A reasonable probability is a probability sufficient to undermine confidence in
the outcome.  Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

An accused is entitled to reasonably effective
assistance of counsel.  King v. State, 649 S.W.2d 42, 44 (Tex. Crim.
App. 1983).  When evaluating a claim of ineffective assistance, the appellate
court evaluates the totality of the representation and the particular
circumstances of each case.  Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999).  There is a strong presumption that counsel’s actions and
decisions were reasonably professional and motivated by sound trial strategy.  See
Salinas, 163 S.W.3d at 740; Stults v. State, 23 S.W.3d 198, 208
(Tex. App.—Houston [14th Dist.] 2000, pet. ref’d).  To overcome the presumption
of reasonably professional assistance, any allegation of ineffectiveness must
be firmly founded in the record, and the record must affirmatively demonstrate
the alleged ineffectiveness.  Thompson, 9 S.W.3d at 813.  When
determining the validity of an ineffective assistance of counsel claim, any
judicial review must be highly deferential to trial counsel and avoid the
deleterious effects of hindsight.  Ingraham v. State, 679 S.W.2d 503,
509 (Tex. Crim. App. 1984).  When the record is silent regarding the reasons
for counsel’s conduct, as in this case, a finding that counsel was ineffective
would require impermissible speculation by the appellate court.  Stults, 23
S.W.3d at 208.  Absent specific explanations for counsel’s decisions, a record
on direct appeal will rarely contain sufficient information to evaluate an
ineffective assistance claim.  See Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002).

B.      Analysis

1.       Failure
to Object to Trial Judge’s Comments

Having previously concluded that the trial court’s
statements were not fundamental error, we now consider whether failure to
object to the trial court’s statements was ineffective assistance of counsel. 
Appellant makes the allegations that “no reasonably effective trial attorney
would have neglected to have made an objection to the trial court’s improper
comments” and “there could not be any sound trial strategy for not objecting to
[the] comments.”  Appellant provides no citation or evidence for these
statements.  Nor does appellant provide any evidence regarding defense
counsel’s reasons for not objecting to the statement.  A strong presumption exists
that defense counsel was competent and we defer to the counsel’s judgment
whenever possible.  Salinas v. State, 163 S.W.3d at 740; Ingraham v.
State, 679 S.W.2d at 509.  Without further evidence, we must conclude
appellant’s trial counsel chose not to object as part of a valid trial
strategy.  Salinas v. State, 163 S.W.3d at 740; Ingraham v. State, 679
S.W.2d at 509.  

 

2.         Failure
to Object to Hearsay Regarding Extraneous Offenses

Appellant stipulated to the extraneous offenses introduced
in the punishment phase of his trial, but now objects that Officer Brillon’s
testimony violated both the Confrontation Clause of the U.S. Constitution and
the Texas evidence rules regarding hearsay.  U.S.
Const. amend. VI.; Tex. R. Evid. 802.  

The State had the right to prove these extraneous
offenses to the jury for consideration during the punishment deliberations. 
Tex. Code Crim. Proc. Ann. Art. 37.07, § 3(a)(1).  If defense counsel had
objected to the testimony of Officer Brillon, the State could have chosen to
subpoena appellant’s victims.  See Tex. R. Evid. 801; Ortiz v. State,
93 S.W.3d 79, 95 (Tex. Crim. App. 2002).  Without evidence regarding trial
counsel’s strategy, it is possible the trial counsel made a strategic decision
not to object to hearsay because trial counsel decided it would be more
damaging to appellant’s case to require his victims’ testimony.  Consequently,
we must presume trial counsel performed at “a level of prevailing professional
norms.”  Salinas v. State, 163 S.W.3d at 740; Ingraham v. State, 679
S.W.2d at 509. 

3.       Reference
to Appellant as “A Monster”

During the punishment phase, appellant admitted he
committed all of the offenses alleged against him.  He also stated that he had participated
in sex offender counseling since 2004 and had not re-offended, so he should be
given mercy by the jury.

Defense counsel stated “appellant was a monster”
during closing arguments.  In the same paragraph, however, he noted that
appellant was eligible for community supervision.  Counsel then went on to
catalog the reasons the jury should be lenient on appellant when considering
punishment.  The second reference to appellant as a monster was: 

[Appellant] got on the stand and told you what he has
done.  He told you he was a monster.  He lied about it in the past, sure . . .
I’m asking you to keep him on community supervision so he can continue to go[]
to those classes, he can be monitored by the State, and he can continue to support
his children.  I’m asking you not to lock him in a cage . . .”  (6 RR 29)

We presume defense counsel was arguing appellant’s
previous actions were monstrous, but appellant was a changed man deserving of
an opportunity to avoid prison.  

Appellant argues that “‘Monster’ is such a
grotesquely abusive term that no reasonably effective attorney would ever
consider using it . . .” He cites Tompkins v. State as support for that
assertion.  774 S.W.2d 195, 218 (Tex. Crim. App. 1987).  We conclude the case
of Tompkins is not compelling precedent.  In Tompkins, the
prosecuting attorney referred to the defendant as “an animal” during argument. 
Id.  Nonetheless, the Court of Criminal Appeals declined to overturn the
conviction on that basis.  Id.

In the instant case, defense counsel made the remark,
with the possible intent of illustrating appellant, who had just confessed to
raping two minors, had become a law abiding citizen.  When we look at the
record as a whole, we cannot conclude no reasonable attorney would have adopted
this strategy.  Without additional evidence regarding trial counsel’s strategic
intent, we must presume that trial counsel was performing as counsel at the
level guaranteed by the Sixth Amendment when he decided to pursue this line of
defense.  U.S. Const. amend. VI; Strickland
v. Washington, 466 U.S. 668 (1984); Salinas v. State, 163 S.W.3d at
740; Ingraham v. State, 679 S.W.2d at 509.

We overrule appellant’s third point of error.

CONCLUSION

Having overruled each of appellant’s points of error,
we affirm the trial court’s judgment.

  

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

Panel consists of Justices
Anderson, Seymore, and McCally.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] The record does not
indicate the reason for the long delay in testing or the reason testing
occurred in 2007.